A94A2414. GRIER v. KANON SERVICE CORPORATION.
(456 SE2d 690)

McMURRAY, Presiding Judge.

Joseph Grier brought suit against Kanon Service Corporation to recover damages for personal injuries. The trial court granted Kanon Service Corporation's motion for summary judgment, and Grier appeals. *Held:*

Grier is a 34-year-old college graduate who was employed as team leader of a Delta Air Lines ("Delta") cabin services crew. The cabin services staff is responsible for stocking airplanes with passenger amenities such as headsets, soft drinks, and snacks. Kanon Service Corporation is an independent cleaning service hired by Delta to clean the interiors of certain aircraft. On the night in issue, Grier drove his team out to a Delta L-1011 in a lift truck to perform cabin services. While his crew raised the platform to enter the plane through the mid-fuselage door, Grier walked around to enter the plane through the "jetway" (the accordion-like hallway commonly used by passengers). When he entered the plane, he observed a Kanon Service Corporation cleaning crew aboard. Because it was stan-

dard Delta policy not to service an airplane when a cleaning crew was at work, Grier decided to take his team on to another plane. He testified on his deposition that he attempted to find out from one of the Kanon Service Corporation's personnel when the cleaning would be completed, but the person he questioned did not appear to understand English.

Grier then proceeded down the aisle to the mid-door, where his team waited outside on the lift platform. He disengaged the safety switch and opened the mid-door from the inside. He gave his team instructions, notified his supervisor that they were proceeding to another plane, and returned to the mid-door area to collect his team and move on. His team members all left through the mid-door and entered the lift truck. Grier engaged the lever inside the plane to arm it to close the mid-door, and prepared to leave. He intended to close the door using another switch outside the plane after he had exited. He was the last member of his team to leave, as was his practice. He then turned toward the truck to count heads on his team. He was wearing earplugs to protect his hearing from the noise of the airplanes, in accordance with Delta policy. The mid-door then began to close. Grier testified he assumed the door was closed by a Kanon Service Corporation employee inside the airplane because "[t]hey were the only ones there." Although Grier tried to pull his foot out, he testified he was not able to do so before it came down on his foot, injuring his toes. He then used the door's emergency handle to raise the door and release his foot.

Grier argues that genuine issues of material fact remain as to whether he exercised ordinary care to avoid the hazard in question. The L-1011 mid-door is a large cargo door over three feet wide and six feet tall, which closes vertically from top to bottom. It is electrically activated and contains mechanical locks. When operated from the open position to the closed position it takes approximately nine to eleven seconds to fully close, during which time it makes a loud and high-pitched noise. There was evidence that the door closing is "very" obvious and although Grier was wearing earplugs, his testimony indicates he communicated with the members of his team.

In addition, Grier was familiar with this airplane and knew that once armed, the door could be closed either from the inside or the outside. He had personally activated the mid-door enabling switch. Nevertheless, after arming the door he stood with his right foot over the threshold, and with his toes pointing toward the inside of the plane while his head turned away, toward the truck. He testified that he did not see the door coming down during the nine to eleven seconds it took to close because he "wasn't looking."

While the facts suggest some lack of care on the part of plaintiff for his own protection, this is inextricably intertwined with the negli-

gence of the person who activated the door while plaintiff stood in its path. Negligence issues, including foreseeability and proximate cause, and the application of the defenses of contributory negligence and of assumption of the risk are normally jury matters that may be resolved as a matter of law only in clear and palpable cases. *Taft v. Taft*, 209 Ga. App. 499, 500 (1) (433 SE2d 667); *Wade v. Mitchell*, 206 Ga. App. 265, 268 (4) (424 SE2d 810); *Wade v. Polytech Indus.*, 202 Ga. App. 18, 22 (3) (413 SE2d 468). In the case sub judice, the degree to which plaintiff's injury should be attributed to his own negligence is not so clear as to permit summary adjudication. The evidence as to the door's size, closing speed, and noise level while closing raises questions as to just how great was the risk incurred and whether plaintiff fully appreciated that risk. A jury must determine whether it was reasonable for plaintiff to assume that the door would not be activated by another or that activation of the door would become apparent to him.

*Judgment reversed. Pope, P. J., Johnson, Blackburn and Ruffin, JJ., concur. Beasley, C. J., Birdsong, P. J., Andrews and Smith, JJ., dissent.*

SMITH, Judge, dissenting.

I must respectfully dissent. This case presents no new issues of law; the question presented, simply put, is whether the trial court correctly concluded that the evidence was so compelling as to merit summary adjudication. The trial court concluded that it was, and I believe that conclusion to be eminently correct.

"Assumption of the risk is a complete defense and arises when, even if defendant is negligent, plaintiff himself is negligent in such a way that his own negligence is the sole proximate cause. Although issues of negligence, lack of care in avoiding the negligence of others, lack of care for one's own safety, and assumption of the risk are ordinarily not susceptible to summary adjudication, where the evidence shows clearly and palpably that the jury could reasonably draw but one conclusion the issue of assumption of risk may be determined on summary judgment." (Citations and punctuation omitted.) *Sapp v. Effingham County Bd. of Ed.*, 200 Ga. App. 695, 696 (1) (409 SE2d 89) (1991).

The facts are undisputed, yet the majority apparently concludes that material questions of *fact* remain whether Grier had the best — and the last — chance to avoid the misfortune that befell him. The opposite is clear to me. Grier was 34 years old and a college graduate. He was not a stranger to the aircraft, but worked on such airplanes every day. He *knew* the door could be lowered by switches both inside and outside the craft; he knew a Kanon crew was present inside the aircraft. Yet despite all this knowledge, after arming this heavy door

himself so it could be closed without his knowledge, Grier then placed *himself* in position to be injured. That position was so contorted that he stood with his body *facing* the door and his right foot *over the threshold*, but with his face turned almost 180 degrees *backward*, while the door descended heavily and loudly, over an interval of nine to eleven seconds, onto his toes.

It is certainly possible that the person who ultimately caused the door to close was negligent. However, even assuming the negligence of that person, Grier could have *completely avoided* any injury by removing his foot during the door's downward descent, or by stopping the door using the outside switch. Although he was wearing earplugs that made it difficult to hear the door closing, he could have perceived the descent of the door had he been looking at the door. He admitted, however, that he "wasn't looking." In my opinion, this was not the exercise of ordinary care for his own safety.

Georgia law presumes that every adult possesses such ordinary intelligence, judgment, and discretion as will enable him to appreciate obvious danger. "At some point the danger and likelihood of self-injury becomes so obvious that actual knowledge by the plaintiff is unnecessary." *Union Carbide Corp. v. Holton*, 136 Ga. App. 726, 732 (222 SE2d 105) (1975). "If the plaintiff by ordinary care could have avoided the consequences to himself caused by the defendant's negligence, he is not entitled to recover." OCGA § 51-11-7. In my view, Grier is not entitled to recover, and I would affirm the trial court's grant of summary judgment to Kanon.

I am authorized to state that Chief Judge Beasley, Presiding Judge Birdsong and Judge Andrews join in this dissent.

DECIDED MARCH 17, 1995 —
RECONSIDERATION DENIED MARCH 30, 1995 — 

*Gambrell & Stolz, Irwin W. Stolz, Jr., Charles N. Bowen*, for appellant.

*Webb, Carlock, Copeland, Semler & Stair, Kent T. Stair, Robert W. Browning*, for appellee.