William A. RAYMOND, Plaintiff,

v.

AMADA CO., LTD., Amada Engineering
& Service Co., and U.S. Amada,
Ltd., Defendants.

Civil Action No. 3:94–CV–77–JTC.

United States District Court,
N.D. Georgia,
Newman Division.

April 12, 1996.

John G. Blackmon, Daniel Wayne Sigelman, Atlanta, GA, Michael G. Kam, Newman,

GA, Steven W. Saccoccia, Edward H. Kellogg, Jr., Decatur, GA, for plaintiff.

William Franklin Long, III, Alan R. Perry, Jr., Atlanta, GA, for defendants.

### ORDER

CAMP, District Judge.

This action is before the Court on Defendants' Motion for Summary Judgment [# 46] and Defendants' Motion for Leave to File Supplemental Brief [# 58]. The Motion for Leave to File a Supplemental Brief [# 58] is **DENIED**.

### I: FACTS

Plaintiff was employed by Hoshizaki America, Inc., in the sheet metal shop. Part of Plaintiff's job duties included operating and cleaning a "Fine Alpha Bender" machine. There were several of these machines in the sheet metal department.

The Fine Alpha Bender is an industrial machine used to bend sheets of metal to make ice machines. A "key switch" could turn off the power to the machine, freezing the machine in the position it last held. The rear of the machine contained a heavy metal arm called the "back gauge." The back gauge was lowered by pressing a button on the front of the machine which activated a hydraulic pump. When pressed, the button caused the back gauge arm to lower to its lowest position. The back gauge arms were not visible from the area where the button is depressed. Plaintiff claims that the moving parts of the machine which were visible from the front or during operation proceeded at a slow pace. He states that he had no knowledge of the rapidity with which the back gauge arms descended, but assumed them to move at the same pace as the moving parts which were visible. He never saw the back gauge arms while in motion.

Maintenance of the machine required that the area underneath the back gauge arms be cleaned out every three to four weeks. The arms were required to be in the raised position for cleaning under the arms. On July 10, 1992, near the end of the shift, Plaintiff was cleaning a Fine Alpha Bender. Plaintiff did not use the key switch to deactivate the machine. While he was behind the machine cleaning under the back gauge arms, another operator pressed the button lowering the back gauge arms. The machine then rapidly dropped the back gauge bar on Plaintiff's right hand. Plaintiff's hand was crushed and received severe injuries.

The "Fine Alpha Bender" machine was manufactured, sold and distributed by Defendants. Plaintiff originally brought this action in state court, but Defendants removed on diversity grounds. Plaintiff's Complaint alleges negligent failure to warn, and strict products liability based on design defects.

### II: MOTION FOR SUMMARY JUDGMENT

Defendants have moved for summary judgment on grounds of an open and obvious defect and assumption of the risk.

#### A) SUMMARY JUDGMENT STANDARD

Rule 56(c) of the Federal Rules of Civil Procedure defines the standard for summary judgment: Courts should grant summary judgment when "there is no genuine issue as to any material fact ... and the moving party is entitled to judgment as a matter of law." The substantive law applicable to the case determines which facts are material. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). "The district court should 'resolve all reasonable doubts about the facts in favor of the non-movant,' ... and draw 'all justifiable inferences ... in his favor....' " *United States v. Four Parcels of Real Property*, 941 F.2d 1428, 1437 (11th Cir.1991). The court may not weigh conflicting evidence nor make credibility determinations. *Hairston v. Gainesville Sun Publ. Co.*, 9 F.3d 913, 919 (11th Cir.1993), *rh'g denied*, 16 F.3d 1233 (1994) (en banc).

As a general rule, "[the] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if

any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). However, the movant's responsibility varies depending upon which party bears the burden of proof at trial on the issue in question.

For issues upon which the movant bears the burden of proof at trial, the moving party must affirmatively demonstrate the absence of a genuine issue of material fact as to each element of its claim on that legal issue. It must support its motion with credible evidence that would entitle it to a directed verdict if not controverted at trial. If the moving party makes such a showing, it is entitled to summary judgment unless the non-moving party comes forward with significant, probative evidence demonstrating the existence of an issue of fact. *Fitzpatrick v. City of Atlanta,* 2 F.3d 1112, 1115 (11th Cir.1993) (quoting *Four Parcels,* 941 F.2d at 1437–38).

On the other hand, when the non-movant bears the burden of proof at trial, the moving party is not required to support its motion with affidavits or other similar material negating the opponent's claim but may simply point out to the district court that there is an absence of evidence to support the non-moving party's case on the issue in question. *Id.* at 1115–16. Of course, the movant may offer evidence to affirmatively negate a material fact upon which the non-movant has the burden and which is essential to its claim. In either case, the non-movant may not rely upon allegations or denials in the pleadings. Fed.R.Civ.P. 56(e). The non-movant must respond with sufficient evidence to withstand a directed verdict motion at trial. *Hammer v. Slater,* 20 F.3d 1137, 1141 (11th Cir.1994) (citing *Fitzpatrick,* 2 F.3d at 1116–17). The non-movant may do so either by pointing out evidence in the record which the movant overlooked or by coming forward with additional evidence. *Id.*

"The mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of

material fact." *Anderson v. Liberty Lobby,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). An issue is not genuine if it is unsupported by evidence, or if it is created by evidence that is "merely colorable" or is "not significantly probative." *Id.* at 249, 106 S.Ct. at 2511. Similarly, a fact is not material unless it is identified by the controlling substantive law as an essential element of the non-moving party's case. *Id.,* at 248, 106 S.Ct. at 2510.

B) Discussion

1) Open and Obvious Defect

Defendants argue that they are not liable because any danger from the back gauge arm of the Fine Alpha Bender was open and obvious. Plaintiff responds that the decision of the Georgia Supreme Court in *Banks v. ICI Americas, Inc.,* 264 Ga. 732, 450 S.E.2d 671 (1994), has abrogated the open and obvious rule. *Banks* altered Georgia law in products liability cases by adopting a risk-utility analysis for design defects. *Id.,* at 735–37, 450 S.E.2d 671.

This Court has recently held that the "open and obvious" doctrine no longer applies as an absolute defense after *Banks. See Snow v. Bellamy Mfg.,* Civil Action No. 1:94–CV–957–JTC (N.D.Ga.) (Order of September 26, 1995).

Georgia law has long recognized the "open and obvious" or "patent danger" rule, whereby an injured party cannot recover if the danger from which he was injured is open and obvious. *See, e.g., Weatherby v. Honda Motor Co., Ltd.,* 195 Ga.App. 169, 393 S.E.2d 64 (1990), Cert. Den.; *Wilson v. Bicycle South, Inc.,* 915 F.2d 1503, 1507 (11th Cir. 1990) (citing *Weatherby* and other Georgia cases). The open and obvious doctrine is not an affirmative defense, but in essence points out the failure of part of a plaintiff's case— the necessity to prove a latent defect. Kruk, Products Liability: Modern Status of Rule that There is No Liability for Patent or Obvious Dangers, 35 A.L.R.4th 861, § 2 at 865 [hereinafter "Modern Patent Danger"]; Darling, The Patent Danger Rule: An Analysis and a Survey of its Vitality, 29 Mercer L.Rev. 583, 583 & 601 n. 132 (1978) [hereinaf-

ter "Patent Danger Rule"]; *see also Weatherby,* 195 Ga.App. at 171, 393 S.E.2d 64. The open and obvious rule states "that a product is not defective if the absence of a safety device is open and obvious, and there is no duty to warn of an obvious danger." *Id.,* at 170, 393 S.E.2d 64. Whether a danger is open and obvious depends on an "objective view of the product;" the user's perceptions are irrelevant. *Id.,* at 171, 393 S.E.2d 64.

*Banks* does not directly address the open and obvious rule. *See* 264 Ga. 732, 450 S.E.2d 671. However, the *Banks* court specifically overruled previous Georgia product liability cases in which the alleged product defect presented an obvious danger to the user. *Id.,* at 734, 450 S.E.2d 671. The Court has located no decisions of Georgia courts which discuss an open and obvious defect under a risk-utility analysis.[1] Thus, the Court must begin its analysis by examining the sources upon which the *Banks* court relied in reaching its decision.

*Banks* cited cases from New Jersey, Montana, and California in adopting its risk-utility analysis. 264 Ga. at 735–37, 450 S.E.2d 671. The common law of these jurisdictions uses obviousness of the defect as one factor in the risk-utility calculus. *See Campos v. Firestone Tire & Rubber Co.,* 98 N.J. 198, 485 A.2d 305 (1984), superseded by statute as recognized in *Dewey v. R.J. Reynolds Tobacco Co.,* 121 N.J. 69, 577 A.2d 1239, 1253 (1990); *Buccery v. General Motors Corp.,* 60 Cal.App.3d 533, 132 Cal.Rptr. 605 (1976); *Stenberg v. Beatrice Foods Co.,* 176 Mont. 123, 576 P.2d 725 (1978). Furthermore, the modern trend toward risk-utility balancing favors such analysis.[2]   Maleski, Eldridge's

Georgia Law of Products Liability § 6B–3 at 62 (Supp.1991) [hereinafter "Georgia Products Liability"]; Modern Patent Danger § 2 at 865; Patent Danger Rule at 588–89. "In jurisdictions that emphasize a policy of risk-utility balancing, the fact that some defect is open and obvious is merely one element to be weighed against all other relevant factors." Georgia Products Liability § 6B–3 at 62; *see also id.* at 38; Patent Danger Rule at 589.

*Banks,* having cited the foregoing authority, impliedly adopted the majority position that the obviousness of the defect is a factor in balancing the risk against the utility of the product. The factors listed in *Banks* include "the avoidability of the danger, i.e., the user's knowledge of the product, . . . as well as common knowledge and expectation of danger; [and] the user's ability to avoid danger." 264 Ga. at 736–37 n. 6, 450 S.E.2d 671. Georgia's open and obvious danger rule requires consideration of the same fact questions. *See Weatherby,* 195 Ga.App. at 171, 393 S.E.2d 64. According to *Banks,* such factors are to be employed in "a test balancing the risks inherent in a product design against the utility of the product so designed." *Banks,* 264 Ga. at 735, 450 S.E.2d 671. Neither the language nor the logic of the *Banks* opinion suggests that some of the enumerated factors constitute a threshold test of liability for obvious dangers. *See id.*

Prior to the adoption of risk-utility in *Banks,* Georgia followed a more expectation-oriented approach to design defect cases. Georgia Products Liability at 63 & 38; *see Greenway v. Peabody Intern. Corp.,* 163 Ga. App. 698, 294 S.E.2d 541 (1982). The so-

---

1. Although this issue has not been yet addressed by Georgia state courts, a federal district court decision made subsequent to this Court's determination in *Snow v. Bellamy Mfg.* suggests that the open and obvious doctrine still applies as an absolute defense. *See Morris v. Clark Equip. Co.,* 904 F.Supp. 1379, 1382–83 (M.D.Ga.1995). Based on the analysis *infra,* this decision is unpersuasive.

2. Michigan, although employing a risk-utility analysis, has retained the open and obvious danger rule for simple products. *See Glittenberg v. Doughboy Recreational Indus., Inc.,* 436 Mich. 673, 462 N.W.2d 348 (1990). However, the Michigan analysis of risk-utility is essentially a negligence test. *See Prentis v. Yale Mfg. Co.,* 421

Mich. 670, 365 N.W.2d 176 (1984); 2 American Law of Products Liability 3d § 28:17; Maleski, Georgia Products Liability § 6A–3 at 39 n. 4 (Supp.1991). Such an analysis is a minority position. *See* 2 Amer.L.Prod.Liab.3d § 28:17; *cf.* Kruk, Modern Patent Danger at 879–80. This negligence analysis was not adopted by the Georgia Supreme Court. *Banks,* 264 Ga. at 735 n. 3, 450 S.E.2d 671. In addition, some judges on the Georgia Court of Appeals have noted that, after adoption of a risk-utility analysis, recovery in products liability may be more likely than in negligence. *See Alexander v. General Motors Corp.,* 219 Ga.App. 660, 665–66, 466 S.E.2d 607, 612 n. 2 (1995) (McMurray, P.J., dissenting).

called "consumer expectation" test for a design defect, *see* Restatement (Second) of Torts § 402A, logically prohibits recovery when a defect is open and obvious. A product with an obvious defect would meet the ordinary consumer's expectations and would not be unreasonably dangerous. Georgia Products Liability, at 63 and 38. Accordingly, Georgia's use of the open and obvious danger rule was logically consistent with its previous analysis of design defects. *See id.*

■ The change in Georgia tort law signalled by *Banks* represents a departure from that prior law. The *Banks* court declared that "we can no longer accept the position that a manufacturer cannot be liable for injuries proximately caused by a product that functions for its intended use regardless of the risks associated with the product and its utility to the public...." 264 Ga. at 737, 450 S.E.2d 671. Consistent with the mandate to weigh the product's risk against its utility, facts impinging upon that risk are not dispositive but are to be balanced with other factors against the benefit derived from the product. *See id.* Accordingly, the Georgia Supreme Court's recent decision in *Banks* has impliedly overruled the open and obvious doctrine as applied to products liability design defect cases.

Defendants' motion did not address factors other than the obviousness of the alleged defect. All of the factors mentioned in *Banks* should now be weighed in determining whether a product is defective. Thus, even assuming that lack of a safety device was obvious, Defendants would not be entitled to summary judgment solely on this ground without consideration of other factors. Defendants' motion on this ground is **DENIED.**

■ The Court notes that this holding does not foreclose a grant of summary judgment in all products liability cases post-*Banks.* Under Georgia law, questions of negligence are usually for a jury. However, where the evidence is plain and indisputable, negligence or contributory negligence may be a matter of law for the court. *McGinnis v. Sunbelt Western Steers, Inc.,* 173 Ga.App. 270, 270–71, 326 S.E.2d 3 (1985); *Manheim Servs. Corp. v. Connell,* 153 Ga.App. 533, 265 S.E.2d 862 (1980). Similarly, the adoption of a risk-utility analysis increases a defendant's burden on summary judgment to show that a product as designed is not defective. *See Banks,* 264 Ga. at 737, 450 S.E.2d 671 (noting that previous evidence was based on old rule); *cf. Alexander,* 466 S.E.2d at 612 n. 2. Where a defendant can show that, by balancing a product's risk against its utility, the lack of a defect is plain and indisputable, summary judgment would be appropriate. *Cf.* Georgia Products Liability § 6A–3 pp. 36–38.

## 2) Assumption of the Risk

■ Defendants next argue that Plaintiff assumed the risk associated with operating the machine. Plaintiff responds that *Banks* also abolished the defense of assumption of the risk. *Banks* does not address the defense of assumption of the risk in relation to a risk-utility analysis.

■ The product liability cases sometimes appear to have confused the open and obvious rule and the defense of assumption of the risk. *See Weatherby,* 195 Ga.App. at 171, 393 S.E.2d 64 (noting the distinction is important). Both defenses depend upon an obvious or known danger associated with the product. The distinction between the two is that the open and obvious rule considers whether the danger was *objectively* obvious in order to determine whether the product is defective. *See id.* On the other hand, the assumption of the risk analysis depends upon whether the particular plaintiff was *subjectively* aware of the dangerous aspect of the product and unreasonably used it anyway. *See id.*

It is inconsistent with a risk-utility analysis to determine defectiveness solely on the basis of one factor, the obviousness of the defect, rather than by balancing all relevant factors. *See supra* § 1. However, it is not inherently inconsistent with risk-utility balancing to hold that one who knowingly uses a dangerous product in an unreasonable manner should be prevented from recovering against the manufacturer for a resulting injury. *See Weatherby,* 195 Ga.App. at 172, 393 S.E.2d 64.

This Court has recently held that assumption of the risk remains a defense in produce liability cases subsequent to *Banks*. *See Snow v. Bellamy Mfg.*, Civil Action No. 1:94–CV–957–JTC (N.D.Ga.) (Order of September 26, 1995). A majority of courts have held that implied assumption of the risk remains a defense in product liability cases. Soehnel, Products Liability: Contributory Negligence or Assumption of Risk as Defense in Action for Strict Liability or Breach of Warranty Based on Failure to Provide Safety Device for Product Causing Injury, 75 A.L.R.4th 538, § 2 at 549.

■■■ The jurisdictions to which the *Banks* court cited consider assumption of the risk to remain a defense in a risk-utility analysis.[3] *See Milwaukee Elec. Tool Corp. v. Superior Court*, 15 Cal.App.4th 547, 19 Cal.Rptr.2d 24, 37 (1993); *Baker v. Chrysler Corp.*, 55 Cal. App.3d 710, 127 Cal.Rptr. 745 (1976); *Zahrte v. Sturm, Ruger & Co.*, 203 Mont. 90, 661 P.2d 17 (1983); *Suter v. San Angelo Foundry & Mach. Co.*, 81 N.J. 150, 406 A.2d 140 (1979). These cases are consistent with the reasoning and results of Georgia authority that one should not be shielded from the results of a free choice. *See, e.g., Barnes v. Harley–Davidson Motor Co.*, 182 Ga.App. 778, 357 S.E.2d 127 (1987), Cert. Den.; *Deere & Co. v. Brooks*, 250 Ga. 517, 299 S.E.2d 704 (1983). Accordingly, assumption of the risk remains a viable defense in product defect cases.

■■■ The affirmative defense of assumption of the risk requires that "if the user or consumer discovers the defect and is aware of the danger, but nevertheless proceeds unreasonably to make use of the product, he is barred from recovery." *Wilson v. Bicycle South, Inc.*, 915 F.2d 1503, 1507–08 (11th Cir.1990) (quoting *Center Chemical Co. v. Parzini*, 234 Ga. 868, 870, 218 S.E.2d 580 (1975)).

"The defense of assumption of the risk requires: (1) that the plaintiff had some actual knowledge of the danger; (2) that he understood and appreciated the risk

therefore, and (3) that he voluntarily exposed himself to such risk. Stated another way: The doctrine of assumption of the risk of danger applies only where the plaintiff, with a full appreciation of the danger involved and without restriction from his freedom of choice either by the circumstances or by coercion, deliberately chooses an obviously perilous course of conduct so that ... he has assumed all risk of injury."

*York v. Winn Dixie Atlanta, Inc.*, 217 Ga. App. 839, 839–40, 459 S.E.2d 470 (1995), Cert. Den. (quoting *General Tel. Co. v. Hiers*, 179 Ga.App. 105, 106, 345 S.E.2d 652 (1986)); *see also Beringause v. Fogleman Truck Lines, Inc.*, 200 Ga.App. 822, 823, 409 S.E.2d 524 (1991), Cert. Den.; *Whitehead v. Seymour*, 120 Ga.App. 25, 28, 169 S.E.2d 369 (1969).

■■■ Thus, to assume the risk, the injured party "must not only know of the facts which create the danger, but he must comprehend and appreciate the nature of the danger he confronts." *Beringause*, 200 Ga. App. at 824, 409 S.E.2d 524. Defendants argue that Plaintiff assumed the risk of injury by cleaning the machine with the back gauge arm in the raised position when he knew another operator was in the work area. They note that Plaintiff could have frozen the machine with the key switch to prevent the arm from moving at all. All reasonable inferences and disputed evidence on this issue must be viewed in favor of the Plaintiff. *See Four Parcels of Real Property*, 941 F.2d at 1437.

■■■ According to the evidence, Plaintiff was not aware that the back gauge arms descended at a rapid rate. There is no evidence that he should have been aware of the rate at which the arms dropped. Defendants assert that Plaintiff should have known of the risk posed by working under the raised back gauge arm. However, Defendants' characterization of the risk Plaintiff assumed is too broad. A general awareness that a descend-

**3.** California has abolished the separate defense of assumption of the risk. *Daly v. General Motors Corp.*, 20 Cal.3d 725, 144 Cal.Rptr. 380, 575 P.2d 1162 (1978). Assumption of the risk in California is viewed as a form of comparative fault, but its principles still apply as a defense in strict products liability actions. *Id.*

ing piece of machinery without a safety device will crush what is beneath it is not enough for Plaintiff to assume the instant risk. "A defect and the danger that arises from it are not necessarily to be identified, and a person may know of one without appreciating the other." *Beringause*, 200 Ga. App. at 824, 409 S.E.2d 524; *see also* Patent Danger Rule at 601 (assumption of the risk requires a plaintiff to recognize the risk posed by the product, not just the design aspect which poses the risk). The risk arguably assumed here is that the back gauge arm dropped so fast that one would not have time to avoid injury. Thus, Plaintiff's knowledge that the back gauge arms were up and the machine was not switched off is not alone sufficient for him to assume all risk of injury.

In defining the risk assumed here, it is important to note that Plaintiff's evidence hinges on his assertion that the back gauge descended much faster than the other machine parts moved. If Plaintiff's argument depended on ignorance of the risk because he failed to observe what was before him, he may have assumed the risk through lack of care for his own safety. *See First Pacific Mgmt. Corp. v. O'Brien*, 184 Ga.App. 277, 280–81, 361 S.E.2d 261 (1987); *Forde v. C & S Ga. Corp.*, 178 Ga.App. 400, 402–03, 343 S.E.2d 164 (1986); *see also* Georgia's 1 Suggested Pattern Jury Instructions § XXXII, I. at 235 (3d ed. 1991) (person assumes a risk "the danger of which is so obvious that the act of taking such risk, in and of itself, amounts to a failure to exercise ordinary care for one's own safety"). In this case, Plaintiff presents evidence that he observed the moving parts of the machine which were visible to an operator. He avers that the back gauge moved much faster than the parts of the machine which he had previously observed and which would normally be observed by one operating the Fine Alpha Bender. Viewing Plaintiff's evidence in his favor, he exercised his powers of observation and reasonably concluded that the back gauge worked like the rest of the machine. *Cf. O'Brien*, 184 Ga.App. at 281, 361 S.E.2d 261 (noting plaintiff did not use his powers of observation to become aware of the danger).

Defendants' cases which suggest that a plaintiff's general awareness of risk is sufficient to assume the risk are inapposite in that context. The cases cited in Reply depend on contributory negligence or the "equal knowledge rule" in property owner negligence cases. *See, e.g., O'Brien*, 184 Ga. App. 277, 361 S.E.2d 261 (equal knowledge rule); *Englehart v. OKI America, Inc.*, 209 Ga.App. 151, 433 S.E.2d 331 (1993), Cert. Den. (same); *Hoover v. Seaboard Air Line R.R. Co.*, 107 Ga.App. 342, 130 S.E.2d 247 (1963) (contributory negligence); *Leonardson v. Georgia Power Co.*, 210 Ga.App. 574, 436 S.E.2d 690 (1993) (same). Both defenses are akin to but distinct from assumption of risk. *See Beringause*, 200 Ga.App. at 823–24, 409 S.E.2d 524; *Weatherby*, 195 Ga.App. at 171–72, 393 S.E.2d 64. The equal knowledge rule and contributory negligence do not require a plaintiff to possess subjective knowledge of the risk. *Id.; Beringause*, 200 Ga.App. at 823–24, 409 S.E.2d 524; *see also* Patent Danger Rule at 601 ("The test [for implied assumption of the risk] is subjective: did this plaintiff know of the danger?"). Defendants did not raise a defense of contributory negligence or "equal knowledge" in this motion. In any case, contributory negligence and equal knowledge are not defenses applicable to strict products liability in Georgia. *See* Georgia Products Liability § 6–15 at 240.

In summary, an obvious danger associated with a product remains relevant in determining whether the plaintiff assumed the risk of the product's use. The assumption of the risk analysis may authorize summary judgment in many cases in which summary judgment would have been granted based upon the open and obvious rule. However, this is not such a case.

Plaintiff has presented sufficient evidence so that the exact scope of the risk allegedly assumed must be determined by a jury. *See Grier v. Kanon Serv. Corp.*, 217 Ga.App. 110, 112, 456 S.E.2d 690 (1995), Cert. Den. (evidence of closing speed of door raised genuine question of fact); *see also Little Rapids Corp. v. McCamy*, 218 Ga.App. 111, 114, 460 S.E.2d 800 (1995), Cert. Den. Therefore, viewing the facts favorably to the non-movant, a genuine question of material fact remains as to whether Plaintiff knew the extent

of the risk posed by the descent of the back gauge arms. Because Defendants have not established Plaintiff's subjective knowledge of the risk, it is unnecessary for the Court to consider whether a risk was allegedly assumed voluntarily. Defendants are not entitled to summary judgment on this ground.

## V: CONCLUSION

Accordingly, Defendants' Motion for Summary Judgment [# 46] is **DENIED.** Defendants' Motion for Leave to File a Supplemental Brief [# 58] is **DENIED.**

**SO ORDERED.**