A96A1229. SHARPNACK et al. v. HOFFINGER INDUSTRIES, INC.
(479 SE2d 435)

JOHNSON, Judge.

Stephen Sharpnack suffered injuries which rendered him a quadriplegic when he dived from a mini-trampoline into an aboveground swimming pool owned by Jerry Morris and Mary Ann Morris. This incident occurred the first day the Morrises opened their pool for use in 1989. Stephen Sharpnack, then 15 years old, had used the pool on several occasions the previous summer and was familiar with the pool's uniform three-and-a-half- to four-foot depth. He was also familiar with hazards associated with diving into such shallow water, explaining during his deposition that he and other swimmers at the Morrises' pool always performed dives "at an angle" to avoid hitting that pool's bottom. He judged, however, that the "watermelon" dive he executed from the surrounding deck at the Morrises' pool was safe because this particular dive called for an immediate "flip" or somersault upon contact with the water's surface. He deposed that he would have never attempted this or any other dive at the Morrises' pool had there been visible warning signs cautioning him against diving into the pool's shallow water.

Patricia Sharpnack, individually and as Stephen Sharpnack's mother, guardian and next friend, filed a products liability action against the manufacturer of the Morrises' pool, Hoffinger Industries,

Inc., and the pool's retail distributor, Olympus Pools, Inc., asserting negligence claims against both Hoffinger and Olympus and strict liability claims against Hoffinger, under OCGA § 51-1-11 (b), for placing the allegedly defectively designed pool on the market without adequate warning signs. The Sharpnacks later filed an amended complaint, alleging in pertinent part that Hoffinger and Olympus negligently administered two retrofit and notification campaigns aimed at providing customers, such as the Morrises who purchased their pool on April 17, 1984, with warning signs and information regarding known hazards associated with using Hoffinger's aboveground swimming pools.

The Sharpnacks dismissed their claims against Olympus after settlement negotiations and moved to strike Hoffinger's defensive pleadings based on alleged discovery abuses. The trial court entered an order questioning Hoffinger's good faith and candor in responding to discovery requests, but found that striking Hoffinger's answer was not an appropriate sanction at that time. The Sharpnacks filed another amended complaint, alleging Hoffinger's fraudulent discovery abuses resulted in the destruction of material evidence.[1]

The trial court entered an order granting Hoffinger's motion for summary judgment. This order provides: "The Court finds that there are no genuine issues of material facts and that [Hoffinger] is entitled to Summary Judgment as a matter of law. The Plaintiff Stephen Sharpnack suffered his tragic injuries as a result of doing a flip off a mini-trampoline into an above ground pool in which he had swam [sic] before. No additional warnings or actions by the pool manufacturer would have prevented his injuries. The Plaintiff Stephen Sharpnack as a matter of law assumed the risk of serious injury and cannot now recover from the remaining defendant manufacturer." This appeal followed.

1. We agree with the trial court that Stephen Sharpnack assumed the risk of his injuries. In this tragic case, Sharpnack's own actions constituted the sole proximate cause of his injuries. The dissent in this case, while agreeing with the trial court that Sharpnack assumed the risk of his injuries, would reverse the trial court, based on the Supreme Court's holding in *Banks v. ICI Americas*, 264 Ga. 732 (450 SE2d 671) (1994), and allow a jury to apply the risk-utility analysis adopted in that case. *Banks* does not mean that summary judgment is no longer appropriate in any case in which a design defect is alleged. The Supreme Court, in adopting the risk-utility

---

[1] The Sharpnacks assert on appeal that these alleged discovery abuses damaged them because certain documents Hoffinger destroyed, particularly a memorandum retrieved from a third party, were not available for development of testimonial evidence during discovery proceedings.

analysis, clearly did not intend to preclude summary judgment in a case such as the one before us, in which it is palpably clear that the plaintiff assumed the risk of his injuries and as clear that his own action was the sole proximate cause of his injuries.

Although *Banks* was decided almost two years ago, whether the risk-utility analysis itself, or the language of our Supreme Court in adopting that analysis in Georgia, precludes summary adjudication in product liability cases is an issue which has not been before us for consideration. At least two federal district courts in Georgia have addressed the issue, however. In *Morris v. Clark Equip. Co.*, 904 FSupp. 1379 (M.D. Ga. 1995) the middle district granted summary judgment to the defendant-manufacturer based on the application of the open and obvious danger rule. Under the facts of that case, the court found that the risk-utility balancing test under *Banks* was satisfied as a matter of law by the plaintiff's acknowledgment that he was aware of the potential danger of moving parts on the forklift which caused his injuries and his admission that he could have totally avoided the danger. Id. at 1383 (11).

In denying defendant-manufacturer's motion for summary judgment based on an open and obvious defense, the northern district in *Raymond v. Amada Co., Ltd.*, 925 FSupp. 1572 (N.D. Ga. 1996) observed that "the Georgia Supreme Court's recent decision in *Banks* has impliedly overruled the open and obvious doctrine as applied to products liability design defect cases." But the court noted that its finding did not necessarily foreclose summary judgment in all products liability cases decided after *Banks*. Id. at 1578. After distinguishing between the open and obvious rule from the defense of assumption of the risk, the court concluded that assumption of the risk remains a viable defense in product defect cases. Id. at 1579. In reaching this conclusion, the court reviewed the law in the jurisdictions cited by the Supreme Court in *Banks* and found that assumption of the risk remains a defense in those jurisdictions which have adopted a risk-utility analysis. While the court in *Raymond* found summary judgment inappropriate on the facts of that case, it is instructive to us for its conclusion that summary judgment based on an assumption of the risk defense is not barred by *Banks*. It would be a misuse of judicial resources to require that those cases in which the facts are clear, palpable and indisputable be submitted to a jury.

2. Contrary to the Sharpnacks' assertions, we find that the trial court did not manifestly abuse its discretion in refusing to strike Hoffinger's answer because of Hoffinger's alleged discovery abuses. Relying on *Milholland v. Oglesby*, 223 Ga. 230 (154 SE2d 194) (1967), the Sharpnacks argue that a trial court has the inherent power to sanction a party who has abused the discovery process. They argue that the court has the inherent power to strike an answer or, as in *Milhol-*

*land*, indefinitely stay an action when a party's conduct has been so opprobrious as to deny the opposition its constitutional due process rights. After reviewing the voluminous record in this case it is clear that Hoffinger repeatedly abused both the letter and spirit of the Civil Practice Act. We share the trial court's doubts about the good faith and candor of Hoffinger. Nonetheless, Sharpnack has not been deprived of his constitutional rights, and the trial court's refusal to exercise its inherent authority to sanction under OCGA § 24-4-22 by striking Hoffinger's answer was not reversible error.

3. The trial court did not grant or deny summary judgment with regard to the claims asserted in the Sharpnacks' amended complaint. We therefore have no jurisdiction to consider issues not ruled upon by the trial court.

*Judgment affirmed. Beasley, C. J., Birdsong, P. J., Pope, P. J., Andrews, Smith and Ruffin, JJ., concur. Blackburn, J., concurs specially. McMurray, P. J., dissents.*

BLACKBURN, Judge, concurring specially.

I concur specially with Judge Johnson's conclusion that the evidence in this case warrants summary judgment for Hoffinger on Sharpnack's strict liability claims. The evidence shows clearly that Sharpnack's own knowing and voluntary actions proximately caused his injuries. Therefore, as a matter of law the plaintiff cannot show an essential element of liability under OCGA § 51-1-11 (b) (1): that the product's "condition when sold is the proximate cause of the injury sustained." That is the reason defendant is entitled to summary judgment.

While the term "assumption of the risk" has been used by the majority as well as Presiding Judge McMurray in his dissent and by the authorities cited, its use is inappropriate here and confuses the analysis. "Assumption of the risk" is a defense to a negligence claim which presumes the existence of the defendant's negligence, but excuses same because of the plaintiff's awareness of the dangerous condition created thereby.

Under the facts of this case, the defendant's conduct was not the proximate cause of plaintiff's injuries and the defendant's conduct in the manufacturing and marketing of its product is thus rendered irrelevant to the analysis.

MCMURRAY, Presiding Judge, dissenting.

I respectfully dissent because I believe the case sub judice is controlled by *Abee v. Stone Mountain Mem. Assn.*, 252 Ga. 465 (314 SE2d 444), wherein the Georgia Supreme Court affirmed the Court of Appeals' holding in *Abee v. Stone Mountain Mem. Assn.*, 169 Ga. App. 167 (312 SE2d 142), that assumption of the risk does not — as a

matter of law — bar an action against an alleged manufacturer based on strict liability under OCGA § 51-1-11 (b). Id. at 168 (1), 170 (2).

In *Abee v. Stone Mountain Mem. Assn.*, 252 Ga. 465, supra, an eleven-year-old child flipped over, fractured his jaw, lost one front tooth, and broke his other front tooth while riding a water slide that was erected by a contractor at Stone Mountain Park. On certiorari, the Georgia Supreme Court affirmed the Court of Appeals' judgment in *Abee v. Stone Mountain Mem. Assn.*, 169 Ga. App. 167, supra, wherein this Court had affirmed the trial court's grant of "summary judgment to Stone Mountain Memorial Association and Smith Construction Company for negligence in the operation, maintenance, construction or supervision of the slide or design of the water pump because the facts show plaintiff assumed the risk; [but at the same time reversed the grant of] summary judgment [as to] Smith Construction on the strict liability count on the basis that Smith was not a manufacturer. . . ." *Abee v. Stone Mountain Mem. Assn.*, 252 Ga. 465, supra. While neither the Supreme Court nor the Court of Appeals explains in *Abee* why the doctrine of assumption of the risk barred the plaintiff's negligence claims while not barring the plaintiff's strict liability claim under OCGA § 51-1-11 (b), such a rule is consistent with the Georgia Supreme Court's holding in *Banks v. ICI Americas*, 264 Ga. 732 (450 SE2d 671), where the primary focus of a manufacturer's liability under OCGA § 51-1-11 (b) was not the conduct of the parties but the characteristic of the product as measured by a risk-utility analysis. Indeed, the Supreme Court expressly states in *Banks* that a user's knowledge of a product and ability to avoid dangers associated with use of the product are merely factors the trier of fact may consider — under a risk-utility analysis — in determining whether the manufacturer breached its duty under OCGA § 51-1-11 (b) and thus whether any such defect was a proximate cause of resulting injuries. Id. at 733 (1), 736, n. 6. This perspective tells me that *Banks* not only establishes the risk analysis test as an appropriate vehicle for determining whether a product's design is defective, but also fairly implements "Georgia's public policy of shifting to manufacturers the burden of loss caused by defective products. . . ." *Alexander v. Gen. Motors Corp.*, 267 Ga. 339, 340 (478 SE2d 123). I therefore cannot join in the majority's attempt to diminish these goals in the case sub judice by holding that Stephen Sharpnack's alleged assumption of the risk completely severs Hoffinger's liability under OCGA § 51-1-11 (b). I would instead adopt an approach taken by other jurisdictions whereby the trier of fact is allowed to consider the relative responsibility of the parties in apportioning the loss and damage resulting from the injury. See *Milwaukee Elec. Tool Corp. v. Superior Court &c.*, 19 Cal. Rptr. 2d 24, 36-37 (1993); *Suter v. San Angelo Foundry &c. Co.*, 406 A2d 140, 145-149

(1979), superseded by statute on other grounds as stated in *Dewey v. R. J. Reynolds Tobacco Co.*, 577 A2d 1239, 1251-1253 (1990). I believe that holding otherwise — and effectively allowing a manufacturer to escape liability under OCGA § 51-1-11 (b) by pointing the finger at the consumer — would undermine the policy behind Georgia's strict liability statute and would erode the manufacturer's incentive to achieve safety in design and production, sanctioning the marketing of dangerous products. See American Law of Products Liability, § 41:23. Accordingly, I would reverse the trial court's order granting summary judgment with regard to plaintiffs' strict tort liability claim under OCGA § 51-1-11 (b). I believe that genuine issues of material fact remain as to Hoffinger's liability for placing a defectively designed pool on the market as well as the extent Stephen Sharpnack's alleged assumption of the risk diminished Hoffinger's liability.

DECIDED DECEMBER 5, 1996 — ▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

*Mozley, Finlayson & Loggins, Robert M. Finlayson II, Richard D. Hall*, for appellants.

*Finley & Buckley, Timothy J. Buckley III*, for appellee.