## A11A0386. GEORGIA NEUROLOGY & REHABILITATION, P.C. et al. v. HILLER.
### (712 SE2d 611)

BARNES, Presiding Judge.

The plaintiffs in this case are Dr. Carl Shenkman and corporate entities owned solely by him.[1] The defendant, Ms. Maria Hiller, was formerly married to Shenkman and worked for his medical practice. The plaintiffs sued Hiller to recover funds allegedly stolen by her in 2006 and 2007 through the use of forgeries and other fraudulent conduct. Hiller subsequently moved for summary judgment on the ground that the plaintiffs' claims were barred by collateral estoppel, judicial estoppel, and res judicata. The trial court granted summary judgment to Hiller, concluding that the plaintiffs were collaterally estopped from asserting their claims because issues relating to the

---

[1] The plaintiff corporations are Georgia Neurology & Rehabilitation, P.C. d/b/a Coastal Neurological Institute d/b/a Neurology Institute of Georgia (collectively, "Coastal Neurological"), and Neurological Institutes of Atlanta, P.C. d/b/a Neurological Institute of Atlanta.

allegedly stolen funds were previously litigated in a post-divorce contempt action brought by Hiller against Shenkman. For the reasons discussed below, we affirm the trial court's grant of summary judgment to Hiller on the plaintiffs' claims pertaining to funds allegedly stolen in 2007. However, because the plaintiffs' claims pertaining to funds allegedly stolen in 2006 were not actually litigated and determined in the prior contempt action, and given that the record on appeal is incomplete with regard to those claims, we vacate the grant of summary judgment to Hiller on the plaintiffs' claims predicated upon the 2006 funds and remand for further consideration in light of this opinion.

Summary judgment is appropriate where "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." OCGA § 9-11-56 (c). "A de novo standard of review applies to an appeal from a grant of summary judgment, and we view the evidence, and all reasonable conclusions and inferences drawn from it, in the light most favorable to the nonmovant." (Citation omitted.) *Salahat v. Fed. Deposit Ins. Corp.*, 298 Ga. App. 624, 625 (680 SE2d 638) (2009).

So viewed, the record shows that Shenkman and Hiller were married and had one child together. During their marriage, Hiller was employed in a marketing position at Shenkman's medical practice, Coastal Neurological.

In May 2007, Hiller filed for a divorce from Shenkman. That same month, Shenkman submitted a civilian warrant affidavit to a magistrate in which he alleged that Hiller had stolen funds from his personal and corporate banking accounts by committing acts of forgery and financial transaction card fraud. Hiller was charged with four counts of forgery in the first degree and ten counts of financial transaction card fraud, but, in August 2007, the assistant district attorney assigned to the case dismissed the charges at the request of Shenkman. The dismissal form that was filed by the assistant district attorney stated: "The State declines to prosecute. Defendant has paid full restitution, and the victim has requested dismissal of the charges." However, according to Shenkman, Hiller never in fact paid full restitution to him or his corporations despite her promise to do so in return for his decision to request dismissal of the criminal charges.

Thereafter, Shenkman and Hiller's divorce was finalized in a judgment and decree entered on December 4, 2007, nunc pro tunc to August 7, 2007. The decree incorporated a settlement agreement entered by the parties that addressed issues of child support, property division, alimony, and debt allocation.

After the completion of the divorce case, Hiller filed a contempt action against Shenkman, claiming that he had not paid alimony,

child support, and other financial obligations required under the settlement agreement incorporated into the final judgment and decree. At the contempt hearing, Shenkman maintained that Hiller had agreed to pay him restitution for the dismissal of the criminal charges against her and sought a set off for the monies that Hiller allegedly had stolen from him and his corporations. The trial court agreed to consider evidence regarding whether Hiller had stolen the funds and ruled that any amounts that Shenkman could prove were stolen would be set off against the amount he owed under the divorce settlement agreement. See, e.g., *Fuller v. Fuller*, 279 Ga. 805, 807 (2) (621 SE2d 419) (2005) (trial court in post-divorce contempt action was authorized to set off funds converted by former spouse). Shenkman responded that he had evidence of funds stolen by Hiller in 2006 and 2007, but the trial court ruled that it would only consider evidence of funds allegedly stolen in 2007, the year that Shenkman's payment obligations under the divorce settlement agreement commenced which he was attempting to reduce by way of set off.

Following the trial court's ruling, Hiller took the stand and testified regarding the issue of the allegedly stolen funds. After hearing Hiller's testimony, the trial court ruled from the bench that Shenkman had failed to show that Hiller stole any money in 2007 and thus would not be entitled to a set off. The trial court subsequently entered an order holding Shenkman in contempt and requiring him to pay certain alimony, child support, and other financial obligations owed under the divorce settlement agreement. Consistent with the trial court's oral findings at the contempt hearing, the contempt order did not reflect any set off for the funds allegedly stolen by Hiller in 2007.

A few months after entry of the contempt order, Shenkman and his corporations commenced the instant action against Hiller, alleging that she stole funds from them in 2006 and 2007 and asserting claims for conversion, breach of fiduciary duty, fraud, an accounting, and punitive damages.[2] Hiller answered and moved for summary judgment on the ground that all of the plaintiffs' claims were

---

[2] In their appellate brief, the plaintiffs also appear to contend that they brought a separate claim for Hiller's alleged breach of her promise to pay full restitution for the stolen funds in return for Shenkman's request for the dismissal of the criminal charges against her. The plaintiffs first made reference to a potential cause of action for breach of contract in their response to Hiller's motion for summary judgment. Hiller did not file a reply brief that addressed the plaintiffs' newly asserted breach of contract claim, and the trial court did not consider the claim in its order granting summary judgment to Hiller. Pretermitting whether the plaintiffs' complaint should be deemed constructively amended to include the breach of contract claim, see *BTL COM Ltd. v. Vachon*, 278 Ga. App. 256, 259 (1), n. 3 (628 SE2d 690) (2006), we have no jurisdiction to address the claim because the trial court never ruled upon it in its summary judgment order. See *Sharpnack v. Hoffinger Indus.*, 223 Ga. App. 833, 836 (3) (479 SE2d 435) (1996).

precluded by collateral estoppel, judicial estoppel, and res judicata. The trial court granted the motion, reasoning that the plaintiffs were collaterally estopped from asserting their claims because the issue of whether Hiller had stolen the funds was previously litigated in the post-divorce contempt action as part of Shenkman's request for a set off. The plaintiffs now appeal from the trial court's summary judgment order.

1. The plaintiffs contend that the trial court erred in granting summary judgment to Hiller based upon the doctrine of collateral estoppel. "Collateral estoppel applies where an issue of fact or law is actually litigated and determined by a valid judgment, and the determination is essential to the judgment. That determination is then conclusive in a subsequent action between the same parties [or their privies]." (Punctuation and footnote omitted.) *Dickerson v. Dickerson*, 247 Ga. App. 812, 813 (1) (545 SE2d 378) (2001). See *In re T. M. G.*, 275 Ga. 543, 544 (570 SE2d 327) (2002). The doctrine "does not require precise identity of the claim — so long as an issue was determined in the previous action and there is identity of the parties or their privies, that issue may not be re-litigated, even as part of a different claim." (Footnote omitted.) *In re T. M. G.*, 275 Ga. at 544. Nevertheless, "[f]or collateral estoppel to apply, a party must have had [a] full opportunity to litigate the issue in question during the prior action. Collateral estoppel will not bar consideration of an issue that has not actually been decided." (Citations and punctuation omitted.) *Toporek v. Zepp*, 224 Ga. App. 26, 28 (1) (479 SE2d 759) (1996).

The parties do not dispute that Shenkman and his corporations were in privity with one another, and so application of the collateral estoppel doctrine turns on what issues were actually litigated and determined in the prior contempt action between Shenkman and Hiller. As previously noted, the trial court in the contempt action allowed Shenkman to introduce evidence that Hiller stole funds from his personal and corporate accounts in 2007 for purposes of establishing the right to a set off, and after hearing the evidence on that issue, the trial court ruled from the bench that no set off would be permitted. The trial court thereafter entered a final order holding Shenkman in contempt that reflected no set off for the funds allegedly stolen in 2007. Accordingly, the record makes plain that the issue of whether Hiller stole funds in 2007 was actually litigated and determined in the prior contempt action and was reduced to a final judgment; the plaintiffs thus were collaterally estopped from asserting claims pertaining to those allegedly stolen funds in the present case.

Significantly, however, the trial court in the prior contempt action did not permit Shenkman to introduce evidence that Hiller

stole funds from his personal and corporate accounts in 2006 for purposes of establishing the right to a set off, given that his obligations to her that were at issue in the contempt action did not arise until the parties' divorce in 2007. Consequently, Shenkman did not litigate the issue of whether Hiller stole funds in 2006, and the trial court in the contempt action never decided that issue in considering whether a set off was appropriate. It follows that the plaintiffs were not collaterally estopped from asserting claims pertaining to funds allegedly stolen in 2006 in the present case, and the trial court erred in holding otherwise in its grant of summary judgment to Hiller.

2. The trial court's order addressed only whether the plaintiffs' claims were barred by collateral estoppel. Nevertheless, "[a] grant of summary judgment must be affirmed if right for any reason, whether stated or unstated. It is the grant itself that is to be reviewed for error, and not the analysis employed." (Citation and punctuation omitted.) *Gilbert v. City of Jackson*, 287 Ga. App. 326, 327 (1) (651 SE2d 461) (2007). Although not addressed by the trial court, Hiller argued in her motion for summary judgment that the plaintiffs' claims also were precluded under the doctrines of judicial estoppel and res judicata. Therefore, we turn to whether the plaintiffs' claims pertaining to funds allegedly stolen in 2006 were precluded on these alternative grounds.

(a) Hiller argued that judicial estoppel applied in this case because in the prior criminal case brought against her, the State dismissed the charges at Shenkman's request after he purportedly told the State that Hiller had already paid full restitution to him. The doctrine of judicial estoppel "precludes a party from asserting a position in a judicial proceeding which is inconsistent with a position previously successfully asserted by it in a prior proceeding." *Southmark Corp. v. Trotter, Smith & Jacobs*, 212 Ga. App. 454, 455 (442 SE2d 265) (1994).

> Application of the doctrine to a particular case depends on three factors: (1) the party's later position must be clearly inconsistent with his earlier one; (2) the party must have persuaded a court to accept his earlier inconsistent position; and (3) the party must derive an unfair advantage or impose an unfair detriment on his opponent if not estopped.

*Battle v. Liberty Mut. Fire Ins. Co.*, 276 Ga. App. 434, 435 (623 SE2d 541) (2005).

In light of these factors, judicial estoppel clearly does not apply in this case. Regardless of what Shenkman said to the State about the criminal charges, the charges were voluntarily dismissed by the

*State*, and so it cannot be said that Shenkman persuaded a *court* to accept his allegedly inconsistent position. Furthermore, no unfair advantage or detriment resulted or will result from the dismissal of the criminal charges against Hiller. As such, the doctrine of judicial estoppel does not bar the plaintiffs from asserting their claims predicated upon the funds allegedly stolen by Hiller in 2006. See *IBF Participating Income Fund v. Dillard-Winecoff, LLC*, 275 Ga. 765, 767 (573 SE2d 58) (2002) (doctrine of judicial estoppel did not apply where prior bankruptcy proceeding concluded in dismissal of the debtor's petition "because no benefit or unfair advantage result[ed] from [the] dismissal"). As such, the trial court's summary judgment order cannot be affirmed on this alternative ground.

(b) Hiller also argued that the doctrine of res judicata barred the plaintiffs' claims because Shenkman could have alleged all of the claims upon which the current complaint was based in the prior divorce action. "The doctrine of res judicata prevents the re-litigation of all claims which have already been adjudicated, or which could have been adjudicated, between identical parties or their privies in identical causes of action." *Waldroup v. Greene County Hosp. Auth.*, 265 Ga. 864, 865 (1) (463 SE2d 5) (1995). See OCGA § 9-12-40. But as a matter of public policy, the doctrine of res judicata is less strictly applied in the context of divorce. See *Dial v. Adkins*, 265 Ga. App. 650, 651-652 (2) (595 SE2d 332) (2004).

> Thus, the true rule of res judicata in divorce . . . cases seems to be that a final decree has the effect of binding the parties and their successors as to all matters which were actually put in issue and decided, or which by necessary implication were decided between the parties.

(Citation, punctuation and emphasis omitted.) *Brookins v. Brookins*, 257 Ga. 205, 207-208 (357 SE2d 77) (1987). Moreover, in applying res judicata in cases where a settlement agreement was incorporated into the final judgment and decree of divorce, we apply the rules of contract construction to determine whether the agreement manifested an intent to settle all issues between the parties. See *Anderson v. Larkin*, 190 Ga. App. 283, 284-285 (378 SE2d 707) (1989); *Prince v. Prince*, 147 Ga. App. 686, 688-689 (1), (2) (250 SE2d 21) (1978).[3]

The final judgment and decree of divorce entered in 2007 incorporated the settlement agreement executed by Shenkman and

---

[3] *Miller v. Steelmaster Material Handling Corp.*, 223 Ga. App. 532 (478 SE2d 601) (1996), relied upon by Hiller, is distinguishable because there was no settlement agreement incorporated into the final judgment and decree that reflected the intent of the parties regarding what issues were settled by the divorce.

Hiller. Given the precedent discussed above, the question, therefore, is whether the settlement agreement manifested an intent to settle all issues between the parties regarding the division of property and funds. If that was the intent of the parties manifested by the settlement agreement, res judicata bars the plaintiffs' claims pertaining to the funds allegedly stolen by Hiller in 2006. See *Prince*, 147 Ga. App. at 689 (2) (claim that ex-wife converted ex-husband's funds was barred by res judicata, where divorce settlement agreement stated that the parties desired "to settle all matters pertaining to alimony and division of property") (punctuation omitted). Compare *Anderson*, 190 Ga. App. at 284-285 (ex-husband's suit on promissory note brought against ex-wife was not barred by res judicata, where divorce settlement agreement was not intended to be a complete settlement of all issues regarding the disposition of property).

Notably, we cannot resolve this interpretive question because the record on appeal is incomplete. While the final judgment and decree of divorce indicates that the settlement agreement between Shenkman and Hiller addressed the division of property, the copy of the settlement agreement included in the record on appeal as part of the parties' record appendix is missing the second page, which apparently contained the property-related provisions. Moreover, it is unclear from the record whether the trial court, in resolving Hiller's motion for summary judgment, had a complete copy of the settlement agreement before it, or was likewise missing the second page. Under these circumstances, we exercise our discretion and vacate the trial court's order to the extent that it granted summary judgment to Hiller on the plaintiffs' claims pertaining to funds allegedly stolen in 2006, and we remand for the trial court to consider the issue of res judicata in the first instance. See *Grimes v. State*, 303 Ga. App. 808, 812-813 (1), n. 4 (695 SE2d 294) (2010) (vacating in part trial court's order and remanding for consideration of alternative legal theory, where the record was incomplete on appeal such that this court could not resolve whether trial court's order should be affirmed as right for any reason). See also *City of Gainesville v. Dodd*, 275 Ga. 834, 838-839 (573 SE2d 369) (2002) (Court of Appeals retains discretion in determining whether to apply the right for any reason rule and consider alternative legal theories not addressed by the trial court in its order granting summary judgment, or to vacate the order and remand for the trial court to consider the alternative legal theories in the first instance).

*Judgment affirmed in part and vacated in part, and case remanded with direction. Adams and Blackwell, JJ., concur.*

DECIDED JUNE 21, 2011.

*Millard C. Farmer, Jr.*, for appellants.
*Weinstock & Scavo, Adam M. Gleklen, Lindsay B. Dodson, Jami M. Kohn*, for appellee.