A97A1940, A97A1941. HALL COUNTY SCHOOL DISTRICT et al.
v. C. ROBERT BEALS & ASSOCIATES, INC. et al.; and vice versa.

(498 SE2d 72)

RUFFIN, Judge.

Currahee Construction Company ("Currahee") is a general contractor hired by the Hall County Board of Education ("school board") to construct a new elementary school. As the contractor, Currahee was required to provide the school board with performance and payment bonds in the contract amount of $2,590,400. During performance of the contract, the school board learned that the bonds provided by Currahee were invalid, and the contract was terminated. Several of Currahee's unpaid subcontractors, who could not make payment claims under the invalid bonds (the "subcontractors"), subsequently sued the school board under OCGA §§ 13-10-1 and 36-82-102 for amounts they were owed for labor and materials provided as part of the construction project. In response to the parties' cross-motions for summary judgment, the trial court ruled (1) that material issues of fact existed concerning the school board's defense that it is not liable because the bonds were facially valid and in the form required by OCGA §§ 36-82-102 and 13-10-1; (2) that the school board was not entitled to sovereign immunity against the subcontractors' claims; and (3) that the school board is entitled to summary judgment on the subcontractors' equitable lien claims. We granted the school board's application for interlocutory appeal based on the trial court's denial of its motion for summary judgment, and the subcontractors cross-appealed. For reasons which follow, we affirm in part and reverse in part.

"To prevail at summary judgment under OCGA § 9-11-56, the moving party must demonstrate that there is no genuine issue of material fact and that the undisputed facts, viewed in the light most favorable to the nonmoving party, warrant judgment as a matter of law. OCGA § 9-11-56 (c). A *defendant* may do this by showing the court that the documents, affidavits, depositions and other evidence in the record reveal that there is no evidence sufficient to create a jury issue on at least one essential element of plaintiff's case. . . . A defendant who will not bear the burden of proof at trial need not affirmatively disprove the nonmoving party's case; instead, the burden on the moving party may be discharged by pointing out by reference to the affidavits, depositions and other documents in the record that there is an absence of evidence to support the nonmoving party's case. If the moving party discharges this burden, the nonmoving party cannot rest on its pleadings, but rather must point to specific evidence giving rise to a triable issue. OCGA § 9-11-56 (e)." *Lau's Corp. v. Haskins*, 261 Ga. 491 (405 SE2d 474) (1991).

Although many of the *relevant* facts in this case appear undis-

puted, we note that the school board has failed to cite the record to support most of its factual assertions. Furthermore, the numerous attempts by both parties to establish facts by reference to attachments to their briefs are inconsequential. Attachments to the briefs do not constitute evidence and are insufficient to establish facts. *Crotty v. Crotty*, 219 Ga. App. 408 (2) (465 SE2d 517) (1995). Court of Appeals Rules 27 (c) (1) and (2) clearly require specific references to the record, and on appeal this Court will not cull the record[1] on the parties' behalf. *Rolleston v. Cherry*, 226 Ga. App. 750, 753 (1) (b) (487 SE2d 354) (1997). We will address each of the asserted errors to the extent allowed by the record references provided.

In this regard, the record shows that the school board advertised a public invitation to submit bids for the construction project and notified potential bidders that 100 percent performance and payment bonds would be required. See OCGA § 13-10-1 (b). On August 13, 1992, the school board unsealed the competing bids, and Currahee was the low bidder. Currahee's bid package contained its bid and a document which was purportedly a bid bond issued by American Specialty Insurance Company ("American Specialty"). The bid bond was executed by Thomas McGlon as the ostensible "Finance Chairman" of American Specialty. On August 17, 1992, the school board voted unanimously to accept Currahee's bid. On August 21, 1992, the parties executed the contract for Currahee to build the school, and the school board received what were purported to be performance and payment bonds for the project. Like the bid bond, the performance and payment bonds were ostensibly issued by American Specialty, payable to the school board and executed by McGlon as the "Finance Chairman" of American Specialty. It is undisputed that the school board did not take any action to verify the validity of the bonds or to determine whether American Surety was solvent, but merely "assumed" the bonds were valid.

On September 28, 1993, when the project was near completion, the school board was notified that the bonds were not issued by American Specialty and were therefore invalid. While investigating the situation, the school board's associate superintendent contacted the Licensing Division of the Georgia Insurance Commissioner's Office ("Insurance Commissioner") and learned that American Specialty was no longer authorized to issue insurance. Apparently, a June 30, 1992 quarterly statement showed that the company was in unsound financial condition. On September 28, 1992, after investigating American Specialty, the Insurance Commissioner suspended the surety's Certificate of Authority to issue insurance.

---

[1] The record in this case consists of approximately 2,000 pages.

Based on the information the school board obtained about the invalid bonds, it notified Currahee that the company was in default of the contract and demanded that it provide valid bonds within seven days. Currahee failed to comply, and on October 29, 1993, the school board notified Currahee that the contract was terminated. At the time of termination, the project was 98 percent complete. A payment request form approved on September 13, 1993, shows that as of that date there remained approximately $180,247 in undisbursed funds for the project, of which $129,523 was a percentage retained by the school board for work already completed by Currahee. Several subcontractors were not paid for work they completed, however, and they asserted a claim against the school board for $291,184.21. A portion of the remaining funds was used to settle some of the claims, but when the remaining subcontractors' claims were not satisfied, they filed the instant action.

*Case No. A97A1940*

1. The trial court properly denied the school board summary judgment because there is conflicting evidence concerning liability under the relevant bond statutes.

The applicable requirements for payment bonds for the school board's construction project are contained in OCGA §§ 36-82-101, 36-82-102 and 13-10-1. OCGA § 36-82-101 generally provides that a public works contract with a county is *invalid* unless the contractor complies with OCGA § 13-10-1. OCGA § 13-10-1 (b) (2) establishes the substantive requirements for payment bonds that a contractor is required to give to the county. However, neither OCGA § 36-82-101 nor OCGA § 13-10-1 (b) (2) purports to impose liability upon a county when a contractor fails to provide the appropriate bond. See *DeKalb County v. J & A Pipeline Co.*, 263 Ga. 645, 646 (1) (437 SE2d 327) (1993). Rather, these statutes establish a contractor's duties regarding performance and payment bonds and when read together merely affect the *validity* of a public works contract. Id.

Instead, OCGA §§ 36-82-102 and 13-10-1 (f) establish the county's duties concerning payment bonds and its liability for failing to perform those duties properly. Specifically, OCGA § 36-82-102 provides that "[i]f the payment bond . . . required in [OCGA § 13-10-1 (b) (2)] . . . is not *taken in the manner and form required in this Code section*, the corporation or body for which the work is done under the contract shall be liable to all subcontractors and to all persons furnishing labor, skill, tools, machinery, or materials to the contractor or subcontractor thereunder for any loss resulting to them from such failure." (Emphasis supplied.) In *J & A Pipeline*, our Supreme Court construed the foregoing emphasized text of OCGA § 36-82-102.

There, the Court held that payment bonds are "taken 'in the manner' required by OCGA § 36-82-102 when they are presented to, approved by and filed with the appropriate county official. The general contractor's payment bond is taken 'in the form' required by OCGA § 36-82-102 when it purports, on its face, to be submitted on behalf of a general contractor who is obligated under OCGA § 13-10-1 (a) (2) to secure such a bond for the use and protection of subcontractors and materialmen." Id. at 649. Based on the language of OCGA §§ 36-82-102 and 13-10-1 (a) (2) *which was in effect during the relevant times* of the *J & A Pipeline* case, the Court concluded that when a "county takes a payment bond from the general contractor or an affidavit from the surety which does, on its face, comport with the statutory requirements, the subcontractors' and materialmen's direct action remedy will be defeated notwithstanding the subsequent inefficacy of the bond or the subsequent discovery of the falsity of the affidavit. . . . There is no express statutory requirement that, prior to taking the bond and affidavit, [the county] undertake any other inquiry to determine whether the bond was 'good and sufficient.' . . ." (Paragraph indention omitted.) *J & A Pipeline*, supra at 649-650. Accordingly, notwithstanding the Court's statement that the bond must be "approved" by the appropriate county official, if that official simply "takes" a bond which is in proper form, then he or she has satisfied the condition that it be "taken in the manner required." Id.

Importantly, however, OCGA § 13-10-1 was amended after the relevant period of events at issue in *J & A Pipeline*, and the amended language placed an additional duty on governmental entities in the approval process. See *J & A Pipeline*, supra at 650. Specifically, OCGA § 13-10-1 (f) now requires that any performance bonds required by § 13-10-1 "shall be *approved* as to form and *as to the solvency of the surety* by the officer of the state, county, municipal corporation, or public board or body who negotiates the contract on behalf of the public entity. Said *approval shall be obtained prior to the bid's being accepted.*" (Emphasis supplied.)

It is clear that the school board is a public body within the meaning of these Code sections and can therefore be held liable for its failure to comply with the statutory requirements. See *J & A Pipeline*, supra at 646-647; *Lance Roofing Co. v. Bd. of Ed. of Gwinnett County*, 235 Ga. 590, 592-593 (221 SE2d 23) (1975). Furthermore, although OCGA § 13-10-1 (f) does not itself provide for liability when the appropriate official fails to approve the solvency of the surety, OCGA § 36-82-102 incorporates this requirement into its own liability provision. OCGA § 36-82-102 specifically references the bond required by OCGA §. 13-10-1 (b) (2). By definition, such a bond is one that is approved by the appropriate official as to solvency of the surety. See OCGA § 13-10-1 (f). In other words, if a bond is not approved as to

solvency of the surety, it does not constitute the bond required by OCGA § 13-10-1 (b) (2) and cannot be taken in the manner and form required by OCGA § 36-82-102. Thus, if an official fails to approve the solvency of the surety as required under OCGA § 13-10-1 (f), the governmental entity can be held liable under OCGA § 36-82-102.

In this case, it is clear that the bond taken by the school board purports, on its face, to be submitted on behalf of Currahee, the general contractor by American Specialty, a surety. Contrary to the subcontractor's arguments, the school board was not required to "make any further inquiry or investigation" into the propriety of the information presented on the face of the bond in order to defeat the subcontractors' direct action remedy. See *J & A Pipeline*, supra at 649. Accordingly, the school board's liability under these statutes, if any, must result from its failure to investigate the solvency of the surety.

As stated above, the school board admits that it did not perform such an investigation or otherwise approve the solvency of the surety. The school board contends, however, that even if it had investigated the solvency of American Specialty, such an investigation would have revealed that the surety was solvent and would not have provided any indication that the bonds were invalid. The school board relies on evidence showing that "[i]nformation regarding matters under investigation or proposed orders of suspension or revocation is *typically* not disclosed [by the Insurance Commissioner] to the general public while the investigation or proposed order is pending." (Emphasis supplied.) This evidence, however, construed in a light most favorable to the subcontractors, does not show that such information is *never* provided, only that it is "typically" not disclosed. Furthermore, even if the Insurance Commissioner never provided the information, this does not preclude the possibility that the school board could have obtained the same report, which showed American Specialty in unsound financial condition, from another source such as the surety. A jury could certainly infer that with this information in hand, the school board would not have approved Currahee's bid and the subcontractors would have avoided their injurious situation. Finally, because the school board never conducted any solvency investigation and OCGA § 13-10-1 (f) does not prescribe what type of investigation is required, it is unclear whether the school board would have learned during an appropriate investigation that the subject bonds were invalid. Again, however, a jury could infer that this fact would have been revealed had the school board conducted a proper solvency investigation. Under these circumstances, evidence exists under which a jury could find that the school board's failure to investigate the surety as required by OCGA §§ 13-10-1 (f) and 36-82-102 resulted in the subcontractors' losses. Accordingly, the trial court did not err

in denying the school board's motion for summary judgment on this ground.

2. We also find that the trial court properly denied the school board's motion for summary judgment on the ground that it was entitled to sovereign immunity against the subcontractors' claims. The school board properly concedes in its appellate brief that it can be held liable for failing to comply with the requirements of OCGA § 36-82-102. See *J & A Pipeline*, supra at 646-647; *Lance Roofing*, supra. And, as we held in Division 1, although OCGA § 13-10-1 (f) does not itself provide for liability when the appropriate official fails to approve the solvency of the surety, OCGA § 36-82-102 incorporates this requirement into its own liability provision. In light of the legislature's provision for liability, we find no merit in the school board's assertion. See OCGA §§ 36-1-3 and 36-82-102.

*Case No. A97A1941*

3. The subcontractors are correct that their claim for liability under OCGA § 36-82-102 is not predicated on the school board's alleged ordinary negligence, but rather negligence per se in violating that Code section. " 'Where a statute provides a general rule of conduct, . . . the violation thereof is negligence as a matter of law, or negligence per se, whereas in the absence of such specific statute the jury is left to determine whether such conduct constitutes negligence. [Cit.]' [Cit.]" *Holbrook v. Exec. Conf. Ctr.*, 219 Ga. App. 104, 107 (2) (464 SE2d 398) (1995). Thus, as stated by the Court in *J & A Pipeline*, it is the school board's "breach" of the duties imposed by OCGA § 36-82-102, which "will render it liable to subcontractors and materialmen who suffer losses thereby." *J & A Pipeline*, supra at 647. Accordingly, to the extent that the trial court found that the subcontractors' complaint is based on ordinary negligence or that its cause of action under OCGA § 36-82-102 requires a showing of ordinary negligence, it is reversed.

4. Notwithstanding the existence of undisputed evidence showing that the school board did not take any action to approve the bonds or investigate the solvency of American Specialty, we disagree with the subcontractors that they were entitled to summary judgment based on this evidence. As stated in Division 1, there is no express statutory requirement that a school board presented with a facially valid bond, "make any further inquiry or investigation" concerning the information contained on the face of the bond. See *J & A Pipeline*, supra at 649. Accordingly, in light of evidence addressed in Division 1 which shows that the bonds are facially valid, the trial court did not err in denying the subcontractors' motion on this ground.

The subcontractors' assertion that they were entitled to summary judgment because the undisputed evidence showed that the school board failed to investigate the surety's solvency is also without merit. " '[E]ven when negligence per se has been shown, proximate cause must still be proved. (Cits.)' [Cit.]" *Holbrook*, supra at 107. In Division 1 we cited evidence which, when viewed in a light most favorable to the subcontractors, created a jury issue concerning whether the school board's failure to investigate American Specialty's solvency caused the subcontractors' damages. This same evidence, when viewed in a light most favorable to the school board, similarly presents a jury issue concerning whether such failure proximately caused the subcontractors' injuries. That evidence showed that the Insurance Commissioner's office typically does not disclose to the general public evidence concerning matters under investigation, such as American Specialty's financial problems. And, although a June 30, 1992 quarterly statement showed that American Specialty was in unsound financial condition, such evidence does not conclusively show that the school board could have obtained a copy of the report or otherwise learned that the surety was insolvent. Finally, as stated in Division 1, it is unclear whether the school board's solvency investigation would have revealed anything concerning the validity of the bonds at issue. Accordingly, material issues of fact remain concerning whether the school board's failure to approve American Specialty's solvency caused the subcontractors' damages.

5. The subcontractors correctly assert that the trial court erroneously granted the school board summary judgment on their equitable lien claim. We note initially, that although the subcontractors did not file a separate direct appeal concerning this issue, OCGA § 5-6-38 authorized them to assert the error as part of their cross appeal. As for the merits of their claim, "a subcontractor may have an 'equitable lien' in funds *held by* the [school board] but belonging to another — such as funds already earned by a general contractor but not yet paid over to it when it becomes insolvent. In such a situation, the subcontractor's 'lien' would allow its claim priority over the claims of the insolvent contractor's other creditors. (Cit.) Under this theory, [the subcontractors have] a claim based on an 'equitable lien' only if and to the extent [the school board] is holding a fund of monies earned by (the general contractor) but not yet paid to it. [Cit.]" *J & A Pipeline*, supra at 651.

As stated above, the record shows that as of September 13, 1993, there remained approximately $180,247 in undisbursed funds under the contract, of which $129,523 was a percentage retained by the school board for work already completed by Currahee. Although a portion of those funds was used to settle some of the claims, the subcontractors have pointed to deposition testimony given by the school

superintendent showing that "[t]he remainder is in an escrow account." In light of this evidence, which shows that the school board has retained money earned by Currahee for work completed, we find that the trial court erred in granting the school board summary judgment on the subcontractors' equitable lien claim. Id.

*Judgment affirmed in part and reversed in part. Birdsong, P. J., and Eldridge, J., concur.*

DECIDED FEBRUARY 17, 1998 —
RECONSIDERATIONS DENIED MARCH 24, 1998 

*Harben & Hartley, Sam S. Harben, Jr., Martha M. Pearson*, for appellants.

*Hulsey, Oliver & Mahar, Samuel L. Oliver, James B. Ritchie*, for appellees.