**SECOND DIVISION**
**BARNES, P. J.,**
**MILLER, and RAY, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules/

June 19, 2013

# In the Court of Appeals of Georgia

A13A0357. SIEGEL v. PARK AVENUE CONDOMINIUM ASSOCIATION, INC.

BARNES, Presiding Judge.

Lorraine Siegel sued Park Avenue Condominium Association, Inc., contending that the Association was liable for injuries she sustained when she fell while standing within the automatic revolving door in the lobby of the Park Avenue Condominium. The trial court granted the Association's motion for summary judgment, and Siegel appeals, asserting that issues of fact remain for a jury to determine. For the reasons that follow, we affirm.

Viewed in the light most favorable to Siegel, the evidence showed that she left her car with the valet at the Park Avenue Condominiums and entered the lobby through the recently installed automatic revolving door. She and two other friends played mah jong for several hours at a resident's apartment, then returned to the lobby and asked the valet to retrieve their cars. One of the women asked Siegel to hold her

portable oxygen bottle while she got into her car. Siegel stepped out of the wind and stood within the "barrel" of the revolving door, and when she signaled to the valet to come get the oxygen bottle, her movement triggered the door's sensor. The door began to rotate and hit Siegel's foot, causing her to fall and break her hip and elbow.

In her appeal, Siegel contends that the trial court erred in granting summary judgment to the Association. Specifically, she claims that the trial court erred (1) in concluding that Siegel's knowledge of the hazardous condition was equal to or superior to the Association's knowledge; (2) in finding that the hazard which caused Siegel to fall was "open and obvious"; (3) in ruling against Siegel on her negligence per se claim; and (4) in concluding that Siegel was not entitled to punitive damages and attorney fees.

"To recover on a theory of premises liability, a plaintiff must show injury caused by a hazard on an owner or occupier of land's premises or approaches that the owner or occupier should have removed in the exercise of ordinary care for the safety of the invited public." *American Multi-Cinema, Inc. v. Brown*, 285 Ga. 442, 444 (2) (679 SE2d 25) (2009).

> Generally, in premises liability cases, after *Robinson v. Kroger Co.*, 268 Ga. 735 (493 SE2d 403) (1997), to survive a motion for summary

2

judgment, a plaintiff must come forward with evidence that, viewed in the most favorable light, would enable a rational trier of fact to find that the defendant had actual or constructive knowledge of the hazard. At that point, the burden of production shifts to the defendant to produce evidence that the plaintiff's injury was caused by his or her own voluntary negligence (intentional disregard of a known risk) or causal negligence (failure to exercise ordinary care for one's personal safety). If the defendant succeeds in doing so, the burden of production shifts back to the plaintiff to come forward with evidence that creates a genuine dispute of fact on the question of voluntary or causal negligence by the plaintiff or tends to show that any such negligence resulted from the defendant's own actions or conditions under the defendant's control. . . . See also OCGA § 51-3-1.

(Citation and punctuation omitted.) *The Landings Assoc. v. Williams*, 291 Ga. 397, 398-399 (728 SE2d 577) (2012). Further, "[i]n premises liability cases, a plaintiff must show that a hazardous condition existed and that the premises owner had superior knowledge of the hazard. It is not sufficient to simply show that an unfortunate event occurred and the plaintiff was injured." (Citations and footnote omitted.) *Henson v. Georgia-Pacific Corp.*, 289 Ga. App. 777, 779 (1) (658 SE2d 391) (2008).

1. Siegel contends that the automatic door constituted a hazard, that the Association's knowledge of the hazardous condition was superior to hers, and that

3

the hazard was not open and obvious. She asserts that she has established that the door was a hazard by showing that it struck her foot and made her fall. She further asserts that the testimony of the Association's manager about how the door worked establishes that the Association had superior knowledge of the hazard.

Other than her testimony that the door began to move while she was within it, hit her foot, and caused her to fall, however, Siegel has presented no evidence that the automatic door malfunctioned. Further, she testified that she noticed the new revolving door when she arrived, and that the previous sliding entry doors had also been motion-activated. She thought the new doors had been installed to address a problem with the sliding doors, which was that they had opened repeatedly when people were waiting inside for their cars and made the lobby cold and windy. She did not have to push the new door because it had a motion sensor, and she had no problems going into the building. When she and her friends came back down to the lobby to leave, she testified, her friend's car came first and the friend went to her car with one of her oxygen canister. Siegel continued,

> I came out the revolving door so [the valet] could take the other [oxygen] canister from me, and I stood in the doorway because it was so windy, and I gestured to the valet to come get the other canister. I didn't choose to walk out and hand it to him because it was very cold and

windy, so I waved. And when I did – the revolving door was motion-sensored – it started to move, and it knocked me down.

The Association's general manager testified that they changed the building's entryway from automatic sliding doors to a revolving door because the lobby was cold and engineering studies concluded there was no other reasonable way to keep it warm. The leaves of the new revolving door were wide enough to accommodate a motorized wheelchair or a walker and operated by an automatic motor triggered by an infrared sensor. The door had sensors within the barrel of the door at the top and bottom that monitored movement and caused the door to slow or stop when needed. If someone inside the door was moving more slowly than the door or stops before exiting, a soft rubber "heel plate" at the bottom of the door will hit her heel, which makes the door slow or stop. After Siegel fell, the company that installed the door inspected it and found it was functioning properly.

The Association thus submitted evidence that the automatic door was operating as it was supposed to, and Siegel presented no evidence to the contrary, such as expert testimony that the speed or force of the automatic doors was excessive or the sensor that triggered the movement was too sensitive or sited improperly. Absent evidence of a defect in addition to a fall, "[t]he record would not support a finding

5

that the [Association] had superior knowledge that the revolving doors were a hazard to [Siegel]." *Owens v. DeKalb Medical Center*, 253 Ga. App. 19, 21 (1) (557 SE2d 404) (2001) (affirming summary judgment to proprietor after invitee fell while exiting through revolving door while using a walker). Therefore the trial court did not err in granting summary judgment to the Association on Siegel's premises liability claim.

2. Siegel also argues that the trial court erred in granting summary judgment to the Association on her negligence per se claim, which is based on the absence of a separate door within 10 feet of the revolving door as required by Section 1008.1.3.1 of the International Building Code, which Georgia has adopted as the state minimum standard building code per OCGA § 8-2-20 (9) (B) (i) (I).

The Association manager testified that the door installation contractor informed the Association at the beginning of the project that to meet code requirements, it needed to install an additional, side-swinging door within ten feet of the new revolving door. The Association contracted with the same company to install the second door, but Siegel fell before that door was installed, two to four weeks after the revolving door was put in.

> In determining whether the violation of a statute or ordinance is
> negligence per se as to a particular person, it is necessary to examine the

6

purposes of the legislation and decide (1) whether the injured person falls within the class of persons it was intended to protect and (2) whether the harm complained of was the harm it was intended to guard against.

(Citation, punctuation, and emphasis omitted.) *Potts v. Fidelity Fruit &Produce Co.*, 165 Ga. App. 546, 547 (301 SE2d 903) (1983); see also *Generali – U.S. Branch v. Southeastern Security Ins. Co.*, 229 Ga. App. 277, 280 (2) (b) (493 SE2d 731) (1997). To determine the purpose of the statute, ordinance, or regulation, the court must "look to the particular statute in respect to its purposes, that is, the evils it was intended to guard against and the persons it was intended to protect." *Huckabee v. Grace*, 48 Ga. App. 621, 632 (173 SE 744) (1934).

Clearly, the general purpose of legislation adopting standard building codes is to ensure that buildings are built or remodeled safely. But

[f]or a violation of the statute to be negligence per se, the violation must be capable of having a causal connection between it and the damage or injury inflicted upon the other person. This refers not to the proximate cause element of the negligence action, which the [plaintiff] still must prove by a preponderance of the evidence, but rather to the character of the legal duty involved. Is this statutory duty one which, if breached, is capable of producing [the injury complained of]?

7

(Citation and punctuation omitted.) *Central Anesthesia Assoc. P.C. v. Worthy*, 173 Ga. App. 150, 153 (325 SE2d 819) (1984).

The consequences to be guarded against by the installation of a side-swinging door within ten feet of a revolving door are not obvious. Siegel argues that absent an alternate entry, she had no choice but to use the revolving door. But as discussed in Division 1, the Association presented evidence that the revolving door itself was operating as it was supposed to, and Siegel presented no evidence to the contrary, nor does she assert that she would have used a side-swinging door if one had been available. In fact, she testified that the previous sliding doors made the lobby very cold for residents and guests waiting for their cars, and that she stood in the barrel of the revolving door to stay out of the cold wind while her friend walked to her car with the first of the two oxygen canisters. A swinging door also would have made the lobby cold and would not have provided shelter from the wind.

Absent evidence that Siegel would have behaved differently had there been a swinging door present, "the court can not declare that there is a case of negligence per se as to [this] cause of action or [this] plaintiff." *Platt v. Southern Photo Material Co.*, 4 Ga. App. 159, 164 (60 SE 1068) (1908). Siegel argues that this cause of action was not addressed or challenged in the Association's motion for summary judgment and

8

was therefore not presented for the trial court's review. However, Siegel raised the issue of negligence per se in her statement of material facts as to which there existed genuine issues to be tried and in her response to the Association's motion for summary judgment. Both parties then argued the merits of the negligence per se claim during the motions hearing. Accordingly, the issue was before the trial court, which did not err in granting summary judgment to the Association on this ground.

3. Because Siegel cannot recover on her underlying tort claims as a matter of law, the trial court did not err in granting summary judgment to the Association on Siegel's claims for punitive damages and attorney fees. *Barnes v. Morganton Baptist Assoc.*, 306 Ga. App. 755, 760 (3) (703 SE2d 359) (2010); *Dowdell v. Krystal Co.*, 291 Ga. App. 469, 473 (4) (662 SE2d 150) (2008).

*Judgment affirmed. Miller and Ray, JJ., concur.*