**SECOND DIVISION
RICKMAN, C. J.,
MILLER, P. J., PIPKIN, J.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
https://www.gaappeals.us/rules**

**August 23, 2022**

# In the Court of Appeals of Georgia

A22A0861. TRAVER v. FELTON MANOR, LLC.

MILLER, Presiding Judge.

This premises liability case stems from Richard Baney's fall at a personal care home after the front automatic doors at the home closed on him. Virginia Lee Traver, as the administrator of Baney's estate, appeals from the grant of summary judgment to Felton Manor, LLC. On appeal, Traver argues that (1) genuine issues of material fact remain as to whether Felton Manor had superior knowledge of the hazard posed by the automatic door system that injured Baney; and (2) genuine issues of material fact remain as to whether Baney exercised ordinary care for his own safety when using the doors, notwithstanding his prior traversal through the doors. Having reviewed the record, we agree with Traver that a jury must decide both of these

issues, and therefore we reverse the trial court's grant of summary judgment to Felton Manor.

> Summary judgment is proper if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Summary judgments enjoy no presumption of correctness on appeal, and an appellate court must satisfy itself de novo that the requirements of OCGA § 9-11-56 (c) have been met. In our de novo review of the grant or denial of a motion for summary judgment, we must view the evidence, and all reasonable inferences drawn therefrom, in the light most favorable to the nonmovant.

(Citations and punctuation omitted.) *Fair v. CV Underground, LLC*, 340 Ga. App. 790 (798 SE2d 358) (2017). It is well-settled that "the 'routine' issues of premises liability, i.e., the negligence of the defendant and the plaintiff, and the plaintiff's lack of ordinary care for personal safety are generally not susceptible of summary adjudication, and . . . summary judgment is granted only when the evidence is plain, palpable, and undisputed." (Citation omitted.) *Rozy Investments, Inc. v. Bristow*, 276 Ga. App. 278, 281 (3) (623 SE2d 171) (2005).

So viewed, the evidence showed that Felton Manor is a personal care home licensed by the State of Georgia. Although Felton Manor's residents are independent,

2

the former executive director described the population as "frail, elderly people" who cannot safely live on their own. Most of the residents use a walking aid, and some are "real slow to move" and can manage "just a pitter-patter . . . a little bit of movement." The maintenance worker employed at the home testified similarly, explaining, "there's going to always be someone here that's slow, no matter what year it is. . . . It's a constant."

In 2015, Felton Manor installed new automatic hinged doors at the most commonly used entrance at the facility. Residents activated the front doors by pushing a button mounted inside the facility. The doors would then open outward, remain in that position for a few seconds, and then automatically close inward. The doors, however, did not feature a sensor that enabled them to remain open if someone was standing in the doorway.[1] As a result, if the doors shut on an individual, they would "bind up" against the person and "hang there" unless the person pushed against them. The force of the doors could also be adjusted so that the doors would not "knock you down." The maintenance worker, who is six feet, three inches tall and weighs 385 pounds, installed the automatic doors and tested the force by allowing the

---

[1] We note that Felton Manor's front gate operated with such a sensor.

doors to shut against him. The force was not tested using any other method or adjusted after the doors were installed.

Baney was a 91-year-old resident at Felton Manor, and he used a "rollator," which is a wheeled mobility assistance device. Baney walked in a "shuffly" manner, which was "common" among the residents. On a morning in July 2017, Baney decided to go for a walk and headed to the automatic doors. After pressing the button to activate the doors, Baney stopped to converse with another resident who had asked him for the time. Baney concluded the conversation and proceeded through the doors, but they closed on him, causing him to fall to the ground. Baney underwent surgery for a broken hip and related treatment, but he was unable to resume his normal activities and experienced pain and medical issues related to the fall until his passing in August 2018. Following Baney's fall, Felton Manor placed a sensor on the doors which now prevents them from closing when an individual is crossing the doorway.

Baney filed a negligence action against Felton Manor in Fulton County State Court. After Baney's death, Traver, the administrator of his estate, was substituted as the plaintiff. Among other allegations, Traver claimed that Felton Manor knew or should have known that the doors posed a risk to elderly residents and that Felton Manor failed to maintain the doors in a safe condition. Felton Manor subsequently

4

filed a motion for summary judgment, which the trial court granted after a hearing. In granting the motion, the trial court reasoned that (1) Felton Manor did not have any actual or constructive knowledge of the hazard which caused Baney's fall; and (2) Baney failed to exercise ordinary care for his safety when he stopped in the doorway to converse with another resident, instead of immediately proceeding through the doors. Traver now appeals.

1. First, Traver argues that fact issues remain as to whether Felton Manor had superior knowledge of the hazard posed by the doors. We agree that genuine issues of material fact exist regarding whether Felton Manor had superior knowledge that the doors posed an unreasonable risk to the residents.

"Under Georgia law, an owner or occupier of land owes its invitees a duty to exercise ordinary care in keeping the premises and approaches safe. A proprietor is not the insurer of the safety of its invitees, but is bound to exercise ordinary care to protect its invitees from unreasonable risks of which it has superior knowledge." (Citation and punctuation omitted.) *Fair*, supra, 340 Ga. App. at 792 (1). "This includes inspecting the premises to discover possible dangerous conditions of which the owner/occupier does not have actual knowledge, and taking reasonable precautions to protect invitees from dangers foreseeable from the arrangement or use

5

of the premises." (Citation and emphasis omitted.) *Rozy Investments, Inc.*, supra, 276 Ga. App. at 280 (4).

Given Felton Manor's status as a care provider for their residents, the residents are generally considered to be Felton Manor's invitees, and Felton Manor therefore owes its residents a duty to exercise ordinary care in keeping its premises safe. See, e.g., *Pye v. Taylor & Bird, Inc.*, 216 Ga. App. 814, 815 (456 SE2d 63) (1995) ("[T]he primary business purpose of a nursing home is to take care of residents who, because of age, infirmity or some ailment, are no longer able to take care of themselves. Because of the special relationship existing between the nursing home and its residents, the residents must generally be considered invitees of the home. Accordingly, as to such residents, the nursing home has a duty to exercise ordinary care in keeping its premises safe."). Further, because Felton Manor installed or authorized the installation of the automatic doors and maintained them, Felton Manor is presumed to have knowledge of the doors' existence and the manner in which they operated. *Rozy Investments, Inc.*, supra, 276 Ga. App. at 279 (4) (defendant was presumed to have knowledge of the existence of hoses on its property, the length of the hoses, and the fact that they did not retract after being used). "Thus, this is not a foreign substance slip and fall case, and [Traver] may establish a cause of action by

showing an act or omission by [Felton Manor] which was the proximate cause of [Baney's] injury and which [Baney] could not have avoided through the exercise of ordinary care." Id.

Here, a fact issue exists regarding whether Felton Manor had actual or constructive knowledge that the timed doors posed a hazard to its residents. First, Felton Manor knew of the distinct likelihood of the doors closing on the residents, given their ages, their mobility, their use of walking aids, and in light of the fact that the doors operated on a timed basis. Felton Manor's residents range in age from 70 to 104 years old. The majority of them use a walking aid, and some walk very slowly. In fact, after the automatic doors were installed, the slower residents were encouraged to "hurry up" in order to traverse the doorway before the allotted time elapsed. During the warmer months when this incident occurred, the door was calibrated to allow the residents between seven and ten seconds to traverse the doorway. The maintenance worker explained that if a resident went through the door with a wheelchair or walker, and they were "very very slow, then it's possible that [the] door[s] could have come back on them." He added, "[b]ased on the timing, . . . [i]f someone doesn't move, it's going to shut on them." Second, Felton Manor also knew that if the doors did close on an individual, they would exert ample force to "bind up" against the person and

7

that the doors would "hang there" and "keep on" the person unless they pushed the doors. Felton Manor was equally aware that if the force of the doors was too high and they shut on an individual, the doors would "keep pulling" the person. Despite this knowledge, Felton Manor did not test or adjust the force to account for the general stature, strength, or agility of Felton Manor's residents. Instead, the only person who tested the force of the doors was the maintenance worker who installed them, and he testified to being six feet three inches tall and weighing 385 pounds. This omission is particularly significant because the former executive director testified that Felton Manor cares for a "very frail population," that the residents "don't need falls," and that the doors should not have touched anyone while they were in use.

When we view all of this evidence in the light most favorable to Traver as the nonmovant, we conclude that there is a genuine issue of material fact as to whether Felton Manor knew that a hazardous condition existed on its property and whether this hazard presented an unreasonable risk to the residents under the circumstances. *Kmart Corp. v. Morris*, 251 Ga. App. 753, 756 (2) (555 SE2d 106) (2001) (the defendant "knew a potentially hazardous condition existed on its property" because it had knowledge that the automatic door opened the wrong way "under specific circumstances," and "it was the jury's task to determine whether the door's operating

8

mechanism posed an unreasonable risk to invitees"). Compare *Siegel v. Park Avenue Condo. Assn., Inc.*, 322 Ga. App. 337, 339 (1) (744 SE2d 876) (2013) (property owner was not negligent where "[t]he door had sensors . . . that monitored movement and caused the door to slow or stop when needed," and "a soft rubber heel plate" allowed the door to stop if someone was moving slowly) (punctuation omitted); *Johnston v. Grand Union Co.*, 189 Ga. App. 270 (1) (375 SE2d 249) (1988) (store owner was not negligent where there was no evidence from which it could be inferred that it knew or should have known that the doors might close unexpectedly).

Also, fact issues remain as to whether Felton Manor's knowledge of the alleged hazard was superior to Baney's. Even assuming that Baney knew that the doors would automatically close at some point, Felton Manor set the timer for the doors; it knew the approximate amount of time for which the doors would remain open; and Felton Manor calibrated the force of the doors upon their installation. Therefore, a jury should determine whether Felton Manor's knowledge of the alleged hazard was superior to Baney's. See *Johnson St. Properties, LLC v. Clure*, 302 Ga. 51, 56 (1) (a) (iii) (805 SE2d 60) (2017) ("[A]lthough the record shows [the plaintiff] had some knowledge of the general hazard, we cannot conclude as a matter of law that her

9

knowledge of the 'specific hazard' was equal to or greater than [the defendant]'s; consequently, a jury question remains as to this issue.").

Although Felton Manor argues that Traver has failed to identify any statutes, ordinances, or regulations regarding the presence or absence of an automatic door sensor, Traver's complaint is predicated upon allegations of ordinary negligence, not negligence per se. As this Court has previously explained, "[w]here a statute[, ordinance, or mandatory regulation] provides a general rule of conduct, the violation thereof is negligence as a matter of law, or negligence per se[.]" (Citation and punctuation omitted.) *Hall County School Dist. v. C. Robert Beals & Assoc., Inc.,* 231 Ga. App. 492, 497 (3) (498 SE2d 72) (1998). Crucially, however, "in the absence of such specific statute[, ordinance, or mandatory regulation,] *the jury* is left to determine whether [the defendant's] conduct constitutes negligence." (Citation omitted; emphasis supplied.) Id. See also *Combs v. Atlanta Auto Auction, Inc.*, 287 Ga. App. 9, 13-17 (3)-(4) (650 SE2d 709) (2007) (although the plaintiff could not prevail as to a claim of negligence per se, a jury had to determine whether the defendant breached its "legal duty to exercise due care" "under the tort doctrine of premises liability") (punctuation omitted). Accordingly, the fact that Traver did not identify any statutes, ordinances, or regulations is not dispositive of Traver's ordinary

negligence claim, and a jury must determine whether Felton Manor exercised ordinary care in keeping its premises safe as required under Georgia premises liability law.

2. Next, in two related arguments, Traver argues that (1) a jury could reasonably conclude that Baney exercised ordinary care for his own safety; and (2) Baney's prior use of the doors does not warrant the grant of summary judgment in Felton Manor's favor. We conclude that the question of whether Baney exercised ordinary care must also be decided by a jury.

"When determining whether an invitee failed to exercise ordinary care for [his] personal safety, the issue is whether, taking into account all the circumstances existing at the time and place of the fall, the invitee exercised the prudence the ordinarily careful person would use in a like situation." *Carter v. Country Club of Roswell, Inc.*, 307 Ga. App. 342, 347 n.3 (705 SE2d 170) (2010).

Taking into account all the circumstances existing at the time and place of Baney's fall, and construing the evidence in favor of Traver, we cannot say that the evidence of Baney's alleged lack of ordinary care is plain, palpable, and undisputed. Felton Manor's automatic front doors are positioned at the most commonly used entrance in the facility, and the former executive director testified that all of the

alternative entrances are "more difficult" to use. And while it is undisputed that Baney stopped at the doorway to speak to another resident, he was not conversing for an inordinately long period, as evidenced by the fact that the doors closed on him after he had already crossed the threshold of the doorway.

Finally, although Felton Manor asserts that Baney had successfully used the doors previously, "the rule imputing knowledge of a danger to a person who has successfully negotiated [an alleged dangerous condition on a previous occasion] applies only to cases involving a static condition that is 'readily discernible' to a person exercising reasonable care for his own safety." (Citation omitted.) *Simmons v. Prince*, 343 Ga. App. 175, 177 (1) (806 SE2d 627) (2017).[2] The record does not evince, as a matter of law, that Baney could have *readily discerned* the specific hazard that is alleged to have caused his fall. Again, presuming that Baney knew that the doors operated on a timed basis, there is no evidence that he was aware of the

---

[2] Although the trial court's order does not mention the prior traversal rule, we address it because Felton Manor raised this rule below, and if it applied here, we would be bound to uphold the trial court's grant of summary judgment under the right-for-any-reason rule. *Georgia-Pacific, LLC v. Fields*, 293 Ga. 499, 504 (2) (748 SE2d 407) (2013) ("A grant of summary judgment must be affirmed if it is right for any reason, whether stated or unstated in the trial court's order, so long as the movant raised the issue in the trial court and the nonmovant had a fair opportunity to respond.") (citation and emphasis omitted).

specific length of time allotted to maneuver through the doorway; or that he knew that the doors would not automatically reopen once they made contact with him; or that he knew that the doors could exert sufficient force to knock him to the ground. We also glean that Felton Manor knew that some of its residents suffered from dementia, including Baney. This Court is not in a position to say, as a matter of law, that such residents would have had the cognitive ability to fully appreciate the risk of using the timed doors. This record, therefore, raises fact questions as to whether Baney fully appreciated the risk incurred when he failed to immediately proceed through the doorway, and a jury must decide whether he exercised ordinary care for his own safety. *Grier v. Kanon Svc. Corp.*, 217 Ga. App. 110, 112 (456 SE2d 690) (1995) (although the facts suggested "some lack of care on the part of plaintiff" when he placed his foot on the threshold of the door and the door closed on his foot, there were fact questions "as to just how great was the risk incurred and whether plaintiff fully appreciated that risk" because of the size of the door and the closing speed). Compare *Thomas v. Southwest Ga. Community Action Council, Inc.*, 215 Ga. App. 638, 639 (451 SE2d 800) (1994) (elderly individual failed to exercise ordinary care as a matter of law where she used a door that caused her to traverse a condition that

13

"she knew to be dangerous" and where she also knew that she could have used an alternative entrance that did not pose danger).

Accordingly, because jury questions exist as to whether Felton Manor had superior knowledge that the automatic doors posed a hazard to its residents and whether Baney failed to exercise ordinary care for his own safety, we reverse the trial court's grant of summary judgment to Felton Manor.

*Judgment reversed. Rickman, C. J., and Pipkin, J., concur.*